UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IVAN CHEKHOVSKII,

                    Petitioner,

        v.

JULIO HERNANDEZ, *et al.*,

                    Respondents.

Case No. C26-1849-SKV

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

Petitioner Ivan Chekhovskii, through counsel, filed a verified petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging an immigration judge's ("IJ") February 12, 2026, denial of bond and his continued detention at the Northwest ICE Processing Center ("NWIPC"). Dkt. 1.  He asserts that the IJ failed to establish an evidentiary nexus with his finding of flight risk, and that his "continued detention no longer comports with constitutional due process." *Id.* at 3, 14.  His petition is accompanied by a declaration from his counsel, Olia Catala, with attached exhibits.  Dkt. 1-3 ("Catala Decl.").  Government Respondents filed a return memorandum (Dkt. 7), along with a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Robert Andron (Dkt. 8) ("Andron Decl.") and an unsworn

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 1

declaration from their counsel, Lawrence Van Daley (Dkt. 9) ("Van Daley Decl."). Petitioner filed a traverse in reply. Dkt. 10.

Having reviewed the parties' submissions and the governing law, the Court DENIES the petition for the reasons set forth below.

### I.   BACKGROUND

Petitioner is a native of Kazakhstan and citizen of Russia who entered the United States seeking asylum on June 3, 2024. Dkt. 1 at 6; Andron Decl., ¶ 3. Petitioner asserts he fled from "targeted persecution in Russia due to his sexual orientation, including the threat of imprisonment and 'forced conversion' therapy under the laws labeling LGBTQ individuals as extremists." Dkt. 1 at 6 (internal quotations in original). U.S. Citizenship and Immigration Services ("USCIS") issued a positive credible fear finding during a subsequent interview. Andron Decl., ¶ 6; *see* Van Daley Decl., ¶ 2, Ex. 2.

On March 10, 2025, an IJ denied Petitioner's application for asylum, withholding of removal, relief under the Convention Against Torture ("CAT"), and ordered Petitioner removed to Russia. Dkt. 1 at 6; Andron Decl., ¶ 10. Petitioner appealed that removal order to the Board of Immigration Appeals ("BIA") on April 8, 2025, which was subsequently dismissed on September 5, 2025. Andron Decl., ¶ 17; *see* Dkt. 1-8 at 4-7 (dismissal order). Petitioner filed an appeal of the BIA's dismissal with the Ninth Circuit on September 25, 2025, which resulted in a stay of Petitioner's removal while his appeal is on review. Dkt. 1-6 at 2.

Petitioner has been in continuous immigration detention since June 4, 2024. Dkts. 1 at 2, 1-4 at 3. While detained, he sought two bond hearings in immigration court that were subsequently denied on April 9, 2025, and October 21, 2025. Andron Decl., ¶¶ 13, 16.

Petitioner's continued detention and lack of bond relief in the immigration court led him to seek habeas relief in this Court. Dkt. 1 at 7. On February 9, 2026, the Honorable Theresa Fricke granted Petitioner's petition and ordered a bond hearing, at which the Government bore the burden to prove by clear and convincing evidence that Petitioner was a flight risk or a danger to the community. *Id.*; *see Chekhovskii v. Scott*, C25-2550-TLF, 2026 WL 353265, at *7 (W.D. Wash. Feb. 9, 2026).

The immigration court held the bond hearing on February 12, 2026, and the IJ denied bond. Dkt. 1 at 7. The IJ issued his order on a checkbox form (Dkt. 1-5 at 2-3), which states: "DHS has established by clear and convincing evidence that Respondent is a flight risk. No amount of cash bond or condition of parole will be sufficient to ensure his presence at future hearings or to ensure his surrender for removal if his petition for review is denied." *Id.* at 2.

The box denying conditional release is checked. *Id.* The box indicating the IJ considered Petitioner's ability to pay a bond is also checked. *Id.* at 3. There are no additional findings or further analysis. *See generally id.* Petitioner filed an appeal of the February 12, 2026, bond denial to the BIA on March 16, 2026, which remains pending. Andron Decl., ¶ 21.

Per Judge Fricke's order, the February 12, 2026, bond hearing was recorded, *Chekhovskii*, 2026 WL 353265, at *7, and Petitioner submitted the audio file from the hearing with his petition, *see* Dkt. 1-11 (notice of filing).

On March 18, 2026, the IJ issued a written memorandum, memorializing the February 12, 2026, bond hearing. Van Daley Decl., ¶ 2, Ex. 4. It discusses, *inter alia*, the procedural history leading up to the hearing, the Government's burden to prove flight risk by clear and convincing evidence as ordered by the federal court, the evidence submitted by Petitioner and the

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 3

Government, findings from that evidence, the IJ's analysis, and the IJ's conclusion that the Government met its burden. *Id.*

On May 29, 2026, Petitioner filed the instant petition, seeking release from immigration detention. Dkt. 1 at 17. He asserts that his "detention no longer bears a reasonable relation to its civil immigration purpose" and has become constitutionally excessive. *Id.* at 9-10. He also seeks "a declaration that [his] ongoing detention in punitive conditions violates the Due Process Clause of the Fifth Amendment[.]" *Id.* at 18.

## II.     LEGAL STANDARDS

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). Habeas petitioners must prove by the preponderance of the evidence that they are entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citation omitted). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

## III.     DISCUSSION

Petitioner raises three claims. First, he asserts that his detention under 8 U.S.C. § 1226(a), which has now exceeded twenty-four months, is unreasonably prolonged and has no foreseeable end, in violation of his Fifth Amendment right to due process. Dkt. 1 at 8-10. Next, he contends that the bond hearing he received under *Chekhovskii* was legally deficient because the IJ "failed to engage with evidence" and "offered no reasoned analysis" to support the conclusion that he posed a flight risk. *Id.* at 14. Finally, he asserts that the current conditions of

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 4

his detention are so punitive that they violate his due process rights under the Fifth Amendment. *Id.* at 15.

In response, Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1), which requires his detention until removal proceedings conclude.  Dkt. 7 at 5.  As for the legal sufficiency of Petitioner's bond hearing, Respondents contend that the IJ "applied the correct legal standard, found by clear and convincing evidence that Petitioner posed a flight risk, and concluded that no conditions of release would reasonably ensure his appearance at future proceedings."  *Id.* at 7.  Respondents further assert that because Petitioner is "challenging the adequacy of the [IJ's] reasoning and findings" (as opposed to raising a question of law), he should be required to exhaust his appeal with the BIA before seeking habeas relief in federal court.  *Id.*  According to Respondents, the "BIA is well positioned to review whether the immigration judge applied the correct legal standard, made sufficient findings, and properly allocated the burden of proof under *Singh* [*v. Holder*, 638 F.3d 1196 (9th Cir. 2011)]."  *Id.* Finally, as for the adequacy of conditions at the NWIPC, Respondents assert that the alleged conditions "do not rise to the level of unconstitutional punishment that would justify the extraordinary remedy of immediate release through habeas corpus."  *Id.* at 9.  Respondents argue that "Petitioner has not demonstrated that the challenged conditions at the NWIPC lack any reasonable administrative justification or were imposed with punitive intent."  *Id.*

### A.      Petitioner is detained under 8 U.S.C. § 1225(b).

The parties disagree on which statute currently authorizes Petitioner's detention. *Compare* Dkt. 1 at 2, *with* Dkt. 7 at 1, 3-4.  Resolving this disagreement is necessary because Petitioner's first claim argues that his detention under § 1226(a) has become unconstitutionally

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 5

prolonged.  Dkt. 1 at 8-10.  The limited evidentiary record does not support Petitioner's conclusory assertion that his detention falls under § 1226(a).

Initially, the Court observes that, in *Chekhovskii*, Petitioner did not dispute the Government's assertion that his detention was mandatory under § 1225(b)(1)(B).  *See* 2026 WL 353265, at *2 (internal citations omitted).  In that case, the court found that Petitioner entered the United States from Mexico without lawful status and was encountered by border patrol.  *Id.* at *1.  He "did not have documents that would allow him to enter the United States[.]"  *Id.*  He was processed as an "arriving [noncitizen], subject to expedited removal."  *Id.*

Here, Petitioner does not acknowledge his earlier concession, explain his shift in position, or otherwise provide additional evidence showing that his detention is now governed under § 1226(a).  *See generally* Dkts. 1, 10.

The current record points to § 1225(b) as the applicable statute governing his detention.  In *Jennings v. Rodriguez*, the Supreme Court noted that "§ 1225(b) applies primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)."  583 U.S. 281, 297 (2018).  Section 1225(b)(1) specifically "applies to [noncitizens] initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation."  *Id.* at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(1)).  In contrast, § 1226(a) "applies to [noncitizens] already present in the United States."  *Id.* at 303; *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (noting § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal").

Like in *Chekhovskii*, the record here shows Petitioner was detained at the border after applying for admission at the Calexico, California Port of Entry and processed for expedited

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 6

removal under INA Section 235(b)(1), which is codified under § 1225(b)(1).  Van Daley Decl., ¶ 2, Ex. 1 at 2.  The Notice to Appear charging him with inadmissibility designates him as an "arriving [noncitizen]" and alleges that, at the time of his application for admission, he did not possess or present a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the INA." *Id.*  In other words, he "lack[ed] . . . valid documentation" as contemplated by § 1225(b)(1).  On this record, the circumstances of Petitioner's entry into the United States align with the Court's description of noncitizens subject to § 1225(b) in *Jennings*.

Accordingly, Petitioner's first claim for relief challenging his detention under 1226(a) is unsupported by the record and appropriately denied.

**B.      The Court has jurisdiction to review the IJ's bond denial.**

Although neither party expressly discusses the Court's jurisdiction to review the IJ's bond decision, Respondents make several arguments regarding their position on Petitioner's available habeas relief which could be interpreted as a challenge to the Court's subject-matter jurisdiction.  *See, e.g.*, Dkt. 7 at 6 ("In [*Dept. of Homeland Sec. v.*] *Thuraissigiam*, the Supreme Court held that a noncitizen seeking initial entry has no entitlement to any legal rights, constitutional or otherwise, beyond those expressly provided by statute.") (citing *Thuraissigiam*, 591 U.S. 103, 107 (2020)); *id.* ("Petitioner possesses only the rights Congress has chosen to afford."); *id.* ("No further constitutional relief is available or warranted.").

Respondents' citations to *Thuraissigiam* lack context and that case is factually distinct from Petitioner's here.  In that case, the Supreme Court was tasked with reviewing the Ninth Circuit's decision holding that restrictions placed on noncitizen asylum seekers to obtain habeas relief under the jurisdiction-stripping statute 8 U.S.C. § 1252(e)(2) were unconstitutional under

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 7

the Suspension Clause and the Due Process Clause. *Thuraissigiam*, 591 U.S. at 106-07. The relief sought by Petitioner in that case was "a writ of habeas corpus, an injunction, or a writ of mandamus directing [the Department] to provide [him] a new opportunity to apply for asylum and other applicable forms of relief." *Id.* at 115.

In reversing the Ninth Circuit's decision, the Supreme Court was not persuaded that the writ of habeas corpus "at the time of the adoption of the Constitution . . . permit[ted] a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Id.* at 117. Notably, the respondent noncitizen was "not ask[ing] to be released," but instead sought "vacatur of his removal order" and an order directing the Department "to provide him with a new opportunity to apply for asylum and other relief from removal." *Id.* at 117-18.

Here, Petitioner is not challenging his removal order, and he *is* seeking release. The Court does not interpret Petitioner's petition, unlike the noncitizen's in *Thuraissigiam*, as an effort to seek release to then gain the opportunity to remain in the United States, lawfully or otherwise. Nor does it interpret the petition as a substantive challenge to the immigration court's removal order. Rather, Petitioner is challenging the IJ's denial of bond as a matter of law, so the issue before the Court is whether Petitioner's detention comports with due process and whether the IJ's application of the law with the given set of facts was legally correct. *See* Dkt. 1 at 8-14.

Federal courts have habeas jurisdiction over constitutional claims or questions of law. *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017). A bond denial due to community danger or flight risk is a mixed question of law and fact, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 8

Accordingly, insofar as Respondents seek to expand *Thuraissigiam*'s holding or otherwise argue he is precluded from challenging his detention or the IJ's discretionary bond decision here, the Court rejects that argument and finds it has subject-matter jurisdiction to review the IJ's discretionary bond denial.

**C.      The Court does not require exhaustion.**

Respondents acknowledge that administrative exhaustion in the context of bond hearing determinations is prudential, rather than jurisdictional.  Dkt. 7 at 8 (citing *Hernandez*, 872 F.3d at 988).  However, the parties disagree on whether the relevant factors weigh in favor of, or against, exhaustion.  *Compare* Dkt. 1 at 16-17, *with* Dkt. 7 at 8.

In the Ninth Circuit, courts may require prudential exhaustion when:  (1) "agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision, (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme, and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion.  *Id.*

Even where requiring exhaustion may be permissible, there are several exceptions warranting a district court's review, such as "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void."  *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)).  "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least

one of these *Laing* factors applies." *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Petitioner asserts that he is raising a challenge to the constitutional sufficiency of a bond hearing which is "'fundamentally a question of law' that is 'better suited to review by the federal courts' than the agency." Dkt. 1 at 16 (citing *W.T.M. v. Bondi*, C25-02428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026)). Petitioner asserts separately that the threat of irreparable injury supports waiving any exhaustion requirement. *Id.* at 16-17. He points to this being his "third attempt at securing bond," which itself was mandated by a previous order from the Court "precisely because his detention had already become unconstitutionally prolonged." *Id.* at 17.

Respondents present their argument on exhaustion as follows:

Petitioner is not raising a pure question of law that the BIA is incapable of addressing; he is challenging the adequacy of the reasoning and findings in a specific bond decision. The BIA is well positioned to review whether the immigration judge applied the correct legal standard, made sufficient findings, and properly allocated the burden of proof under *Singh*. Requiring exhaustion in these circumstances promotes judicial efficiency, allows the agency to correct any error in the first instance, and respects the administrative process Congress established for immigration matters.

Dkt. 7 at 8 (citing *W.T.M.*, 2026 WL 262583, at *3-4).

Turning to the first *Puga* factor, the Court disagrees with Respondents and finds this case *does* present a question of law; namely, whether the IJ correctly applied the legal standard to a given set of facts. *Wilkinson v. Garland*, 601 U.S. 209, 222 (2024). As for the second factor, it is neutral. While requiring exhaustion may promote judicial efficiency, "once the questions presented here are decided, they 'should cease to arise.'" *Hernandez*, 872 F.3d at 989 (quoting *Singh*, 638 F.3d at 1203 n.3). In addition, petitioners are always constrained by the requirement that their claims allege colorable constitutional or legal challenges, which further mitigates the

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 10

concern asserted by Respondents.  As to the third factor, where, as here, the alleged defects are constitutional in nature, the Court finds no reason to delay review in favor of a BIA appeal. *Soriano v. Hernandez*, No. C26-0900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026).  The Court accordingly exercises its discretion and will not require Petitioner to exhaust his BIA appeal before seeking relief in this Court.

**D.      Petitioner has not shown that the IJ abused his discretion.**

As noted, the Court reviews IJs' bond determinations for an abuse of discretion.  *See Martinez*, 124 F.4th at 779-80.  Specifically, while factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard—such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts."  *Id*. at 782 (quoting *Wilkinson*, 601 U.S. at 221).  That is, while the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides[,]" it may review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] are primarily factual[.]"  *Id.* at 782-84 (quoting *Wilkinson*, 601 U.S. at 225).

In making a bond decision, the IJ must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk."  *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)).  An immigration judge may also consider any number of discretionary factors, including:  (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 11

States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *See id.*

Petitioner asserts that the IJ's February 12, 2026, denial of bond was "deficient in every material respect." Dkt. 1 at 12. First, Petitioner asserts that DHS offered virtually no substantive evidence, relied "almost entirely on the denial of Petitioner's asylum application", and "characterize[d] supplemental information submitted in support of his asylum claim as a credibility contradiction." *Id.* Further, Petitioner contends that the IJ did not meaningfully weigh the evidence that Petitioner argues weighed against a flight risk finding, such as the fact that he "voluntarily presented himself to Customs and Border Protection upon arrival" and that he has "substantial community assistance available in the United States, including support from a nonprofit organization and a friend willing to provide housing." *Id.*

Respondents, in turn, argue that the "[IJ] applied the correct legal standard" and that a bond hearing under *Singh* "does not mandate any particular format, length, or level of detail in the written decision." Dkt. 7 at 7. According to Respondents, the "IJ's application of the governing legal standard to the evidence presented constitutes the individualized process due process demands." *Id.* Respondents do not otherwise engage with the evidence DHS submitted at the bond hearing or argue how it satisfied the Government's burden to prove by clear and convincing evidence that Petitioner was a flight risk. Respondents conclude that "[t]he [p]etition does not identify any constitutional defect in the hearing itself that would justify bypassing the administrative process or ordering immediate release." *Id.* at 8.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 12

*1.    Review of the bond hearing audio file*

The Court has reviewed the audio from the bond hearing (Dkt. 1-11, Ex. H) and provides a summary of the relevant audio: The IJ identifies himself and the case number for Petitioner's case. *Id.* at 00:03-00:23.  He explains the posture of the case, stating that the parties were there for a bond hearing ordered by Judge Fricke in Seattle and that the Department bore the burden to show by clear and convincing evidence that Petitioner was either a danger or a flight risk.  *Id.* at 04:35-05:30, 09:07-09:20.  He acknowledges that the proceedings are being recorded.  *Id.* at 09:45.  He acknowledges and marks evidence submitted by Petitioner as exhibits "B1" and "B2." *Id.* at 10:10.  He acknowledges DHS evidence was marked as exhibit "B3."  *Id.* at 10:36.

Acknowledging the Government's burden again, the IJ has counsel for DHS present their argument first.  *Id.* at 10:45.  Counsel argues Petitioner is an "extreme flight risk" and states that Petitioner was previously before the same court, during which the court denied Petitioner's asylum claim and the BIA subsequently upheld that finding.  *Id.* at 11:00-12:05.  Counsel next asks the court to take judicial notice that the court did not find Petitioner credible at the asylum hearing and that Petitioner made contradictory statements.  *Id.* at 12:15-12:41.  Counsel concludes that, given those circumstances, the Department believed Petitioner to be an extreme flight risk.  *Id.* at 12:55.

The IJ asks questions directed to the Department's counsel regarding Petitioner's status as an "arriving alien" and seeks counsel's confirmation that since arriving, Petitioner had not been released or paroled into the United States.  *Id.* at 13:18  The Department's counsel responds that he does not believe Petitioner had ever been released.  *Id.* at 13:36.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 13

The IJ references the Department's evidence and reiterates that it appeared Petitioner was arrested when he applied for admission in California in June of 2024, to which the Department's counsel confirms. *Id.* at 15:11-15:47.

Petitioner's attorney presents her argument next. She first challenges the court's previous credibility determination during his asylum hearing and asserts it was not based on "contradictory statements," but rather because he supplemented information into his "589." *Id.* at 16:45, 17:45. The IJ responds that it was "his case" and that he found petitioner was not credible. The IJ states that the "board" (BIA) did not reach Petitioner's credibility, but affirmed on other grounds. *Id.* at 17:12. The IJ directs Petitioner's counsel to "move on" (from the credibility argument). *Id.* at 18:30.

Petitioner's counsel next asserts that Petitioner did not evade inspection but came to CBP to claim asylum. *Id.* at 19:20. She also reminds the IJ that her client filed an appeal (of the BIA's dismissal of his removal order) with the Ninth Circuit and his stay of removal was approved. *Id.* at 20:10. Petitioner's counsel next asserts that she does not see a basis for the Government to argue her client is a flight risk because he has never shown he intends to evade future proceedings. *Id.* at 21:13-21:22.

The IJ and Petitioner's counsel then discuss ties to the United States, including whether he has any family in the U.S. *Id.* at 23:35. Petitioner's counsel clarifies that he has friends (who were possibly present in the courtroom at the time of the hearing), who were willing to provide financial support, housing, and assurances that Petitioner would appear at future hearings. *Id.* at 24:50. The IJ asks some clarifying questions regarding whether those people are family or friends. *Id.* at 25:30.

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 14

Petitioner's counsel concludes that even if the court determines Petitioner to be a flight risk, some amount of bond can address that risk. *Id.* at 26:02.

The IJ provides the Department with an opportunity to reply, to which the Department's counsel states that the Department does not argue dangerousness because Respondent has been in custody upon arrival. *Id.* at 26:45  In response, the IJ states, "I'm not going to presume if he was released, he would commit a crime. *Id.* at 27:10.

The Court's concludes, "I do find department has met its burden to show by clear and convincing evidence that Respondent is a flight risk. *Id.* at 27:48-27:58.  He denies bond. *Id.* at 28:08.  The IJ briefly discusses appeal dates and subsequently adjourns. *Id.* at 28:14-28:28.

### 2.    The IJ's subsequent written memorandum

Turning to the IJ's written memorandum, the IJ acknowledged that "DHS filed a Form I213, a copy of the [IJ's] order denying [Petitioner's] application for asylum and protection, and a copy of the BIA decision dismissing [Petitioner's] appeal." Van Daley Decl., ¶ 2, Ex. 4 at 1. This evidence, according to the IJ's memorandum, "indicate[d] that Respondent applied for admission from Mexico . . . on June 3, 2024", that he "has been in DHS custody continuously since that time", that his application for asylum and related protections was denied, and that "[t]his court specifically found that [Petitioner] did not provide credible testimony at his [asylum] hearing." *Id.*  The IJ also points out that the BIA dismissed Petitioner's appeal, his removal order is now administratively final, and that he has "no family in the United States." *Id.*

The IJ then discusses the evidence submitted for the bond hearing. *Id.*  He acknowledges that Petitioner's "evidence included a copy of the federal court's habeas order; an email from the Ninth Circuit . . . indicating that [Petitioner] has a pending Petition for Review . . . and a letter and other information about Respondent's sponsor." *Id.*

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 15

The following paragraph provides the IJ's analysis and reads in full:

> Respondent has virtually no ties in the United States. Respondent has no family in the United States, he has never resided in the community of this country, he has never worked in the United States, and his only contacts are with volunteers who have visited him while in detention. Moreover, Respondent's immigration case has been completed, and his order of removal is now administratively final. This court found that Respondent did not testify credibly at his removal hearing. While Respondent has filed a Petition for review with the Ninth Circuit, the outcome of that petition is speculative at this point. Respondent has little incentive to appear at future hearings in his case or to surrender himself for removal if his petition is unsuccessful. Respondent is an exceedingly poor bail risk.
>
> For the foregoing reasons, this court find [*sic*] that DHS has met its burden to show by clear and convincing evidence that Respondent is a flight risk. The court further finds by clear and convincing evidence that no condition of parole or amount of bond would be sufficient to ensure Respondent's presence at future hearings or to surrender himself for removal.

*Id.* at 3.

> 3.    *This Court's analysis*

On the current record, the Court does not find that the IJ incorrectly applied the law to the given set of facts, or that the evidence presented by the Government could not demonstrate, as a matter of law, that Petitioner poses a flight risk.

"When examining any evidentiary proceeding and the adjudicator's opinion, there are at least two ways to challenge whether the adjudicator applied the correct standard of proof." *Hussaini v. Hermosillo*, C26-01618-TLF, 2026 WL 1733159 (W.D. Wash. June 16, 2026) (quoting *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019)). "First, a challenge may be based on the contention that the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion." *Id.* "Second, it may be clear from the adjudicator's opinion itself that [they] simply did not apply the correct standard to the facts." *Id.*

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 16

Turning to the evidence submitted, the Court initially observes that Petitioner did not include with his habeas petition some of the evidence that he submitted for the bond hearing. For example, Petitioner argues the IJ failed to meaningfully weigh the "substantial community assistance available in the United States, including support from a nonprofit organization and a friend willing to provide housing." Dkt. 1 at 12. The native source of that information, or how it was presented to the immigration court for the IJ's consideration, is not before the Court. Petitioner also argues that the IJ "rel[ied] almost entirely on the denial of Petitioner's asylum application . . . and attempt[ed] to characterize supplemental information submitted in support of his asylum claim as a credibility contradiction." *Id*. Neither the "supplemental information" at issue, nor the IJ's order denying Petitioner's asylum application, along with any findings or analysis therein, are before the Court.

While it is not within the Court's province to reweigh evidence, the Court, in reviewing the IJ's bond decision, looks to whether the IJ correctly applied the legal standard to a given set of facts. Such review often requires "close engagement with the facts." *See Martinez*, 124 F.4th at 782; *Wilkinson*, 601 U.S. at 222. Thus, Petitioner's failure to provide at least some of the evidence he contends the IJ failed to meaningfully assess is notable and leaves the Court relying on other sources to ascertain the substance of the evidence considered by the IJ.

Petitioner's argument that the IJ relied almost exclusively on his asylum denial appears misplaced. The BIA has identified that an IJ may "consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond," *see Matter of R-A-V-P-*, 27 I & N Dec. 803, 805 (BIA 2020), but the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano v. Scott*, C26-01268-LK, 2026 WL 1674357, at *7 (W.D. Wash. June 1, 2026). Here, the IJ's focus on

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 17

Petitioner's previous denial of asylum did not appear to be for the sole purpose of emphasizing Petitioner's limited immigration relief, but rather to also acknowledge that the court previously found Petitioner lacked credibility during that proceeding.  As explained above, Petitioner's counsel and the IJ discussed their respective characterizations of the pleadings that purportedly created the contradictions and the IJ reiterated that it was "his case" and he found Petitioner not credible.  While Petitioner may disagree with the IJ's decision and whether the evidence at the asylum hearing undercut his credibility, factfinding underlying a denial of immigration relief is unreviewable here.  *Patel v. Garland*, 596 U.S. 328, 331 (2022); *Wilkinson*, 601 U.S. at 222; *Martinez*, 124 F.4th at 783.  Petitioner does not otherwise argue a noncitizen's credibility is an impermissible factor for an IJ to consider when determining bond.

Petitioner also asserts that the IJ failed to meaningfully weigh evidence of his "substantial community assistance available in the United States, including support from a nonprofit organization and a friend willing to provide housing to ensure his appearance."  Dkt. 1 at 12.  Instead, according to Petitioner, the IJ "abruptly concluded" the hearing and denied bond.  *Id.* This argument fails to acknowledge that, as outlined above, the IJ asked Petitioner's counsel several questions about Petitioner's ties to the United States, which specifically included clarification of the people purportedly willing to provide housing and financial assistance, and whether they were friends or family.  Those questions were pertinent to several factors an IJ properly considers under *Guerra*: whether Petitioner has a fixed address in the United States, the Petitioner's length of residence in the United States, family ties, employment history, and the manner of entry into the United States.  *Guerra*, 24 I. & N. Dec. at 40.

Petitioner also argues that the IJ's written order "broadly assert[s] that he is a flight risk and that no condition of release could adequately address that concern, yet offer[s] no reasoned

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 18

analysis to support that conclusion." Dkt. 1 at 14. He further argues that the IJ's failure "to engage with evidence of available housing, community support, and other proposed conditions of release . . . effectively bypass[ed] the government's burden of proof." *Id*. (citing Dkt. 1-10).

The Court gives less weight and consideration to the IJ's memorandum unless it appears from the memorandum that the IJ erred as a matter of law, or the proceedings were otherwise legally or constitutionally flawed. That is because the contemporaneous audio recording is the most accurate source to assess the adequacy of proceedings. As acknowledged in *Singh*, post-hoc reconstruction can be inadequate because, "once the court has entered judgement, it may become subject to the very natural weight of its conviction, tending to focus on that which supports its holding." 638 F.3d at 1208 (internal quotation and citation omitted); *see id.* ("[A] neutral contemporaneous record of the hearing . . . would provide a "record of sufficient completeness.'").

Unless potentially dispositive, the IJ was not required to discuss each piece of evidence submitted. *See Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011) (citing *Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006)). Petitioner does not assert, and, on this record, the Court does not independently find, that the IJ failed to engage with, or give reasoned consideration to, certain evidence that could reasonably be characterized as "dispositive" on the issue of Petitioner's risk of flight. Rather, the IJ focused on Petitioner's prior credibility finding, his manner of entry into the United States, and the limited ties to the United States, while Petitioner focused on the availability of financial and housing support.

The hearing audio demonstrates the IJ acknowledged the Government's burden of proof several times. He identified the evidence submitted by the parties and asked questions about Petitioner's manner of entry, his continuous detention, and ties to the United States, which

appears to have been primarily based on the Government's evidence. He also specifically engaged with counsel regarding the evidence of his prior credibility determination (also submitted and relied upon by the Government), and asked several questions regarding the people who were willing to assist or sponsor Petitioner should he be released (as argued by Petitioner).

Accordingly, the Court does not find that the evidence relied upon by the IJ could not, as a matter of law, support his finding that Petitioner posed a flight risk. Nor can it conclude, absent evidence that he failed to give reasoned consideration to a piece of dispositive evidence, that he failed to meaningfully engage with the evidence submitted by the parties. The Court again reiterates that Petitioner did not include with his petition several pieces of evidence which he contends rebutted the Government's showing but were inadequately considered by the IJ. This is not to say the Court has reason to believe the omitted evidence would have changed the outcome here, but it is worth acknowledging the challenge of reviewing the legal adequacy of the IJ's bond hearing on an incomplete record. The Court denies Petitioner's second claim for relief.

### E.   Conditions of Confinement

Petitioner's last claim seeks release based on conditions at the NWIPC, which he asserts are unconstitutionally punitive under the Fifth Amendment. Dkt. 1 at 15. He asserts that he is sleep deprived from the lighting and early morning meal times, that the NWIPC lacks adequate natural light and sanitary drinking water, and that he has been denied "basic dental care." *Id.* There is no evidence in the record beyond the allegations contained in his petition.

While the Court acknowledges that it potentially has habeas jurisdiction to hear Petitioner's challenge to conditions of his confinement, *see Tavurov v. Noem*, 819 F. Supp. 3d 1209, 1226-28 (W. D. Wash. 2026) (and the cases cited therein), the current record is insufficiently developed. Notably, the court in *Tavurov* identifies "a list of seven non-exclusive

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 20

considerations" that a court reviews when determining whether a particular immigration detention "becomes so punitive that it could 'transform what was clearly intended as a civil remedy into a criminal penalty[.]'" *Id.* at 1227 (citing *U.S. v. Ward*, 448 U.S. 242, 249 (1980), and quoting *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956)).  Petitioner does not discuss those factors in his petition.  His third claim is accordingly denied without prejudice.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's petition for writ of habeas corpus (Dkt. 1) is denied without prejudice.

Dated this 6th day of July, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS - 21